O'NEAL, mayor, *et al. v.* WHITLEY.

No. 9415. AUGUST 10, 1933.

*J. T. Thomasson* and *Lovejoy & Mayer,* for plaintiffs in error.
*L. M. Wyatt* and *M. U. Mooty,* contra.

BELL, J. J. E. Whitley, a resident of the City of LaGrange, made to the municipal authorities a return of property for taxation for the year 1932. He omitted from his return certain tangible personal property which was not actually situated within the limits of the municipality. The city authorities caused this property to be assessed and added to his return. Whitley brought a suit against the mayor and council to enjoin the assessment. The defendants filed an answer, and the case was submitted to the trial judge upon an agreed statement of facts. An injunction was granted, and the mayor and council excepted. The agreed statement was as follows:

"1. J. E. Whitley resides in and has his legal domicile in La-Grange, Troup County, Georgia. J. E. Whitley does business under the trade-name of the Whitley Construction Company, and as such is engaged in the business of a paving contractor, paving streets in cities and highways. The said J. E. Whitley and Whitley Construction Company have only one office and place of business, which office and place of business is located in the City of LaGrange, Troup County, Georgia.

"2. J. E. Whitley, trading as Whitley Construction Company,

on January 1, 1932, and at all times thereafter, owned certain road building and paving equipment consisting of paving machinery, concrete mixers, pumps, trucks, and other machinery used in the business of a paving contractor, which equipment was of the value of at least $25,000.

"3. On January 1, 1932, none of this equipment was in the City of LaGrange, nor has any of said equipment ever been in the City of LaGrange. On January 1, 1932, part of this equipment was located in Bulloch County, part in Stewart County, and part of it in Pulaski County.

"4. This equipment is moved from place to place, wherever the said Whitley might have use for it in carrying on the business of a paving contractor, and the equipment is left in such city or county where it has been used, after the completion of the contract, either for the paving of a highway or a city street, until such time as another contract is obtained and said equipment is needed, when said equipment is then moved from such place to a location where it is needed for use in fulfilling another paving contract. That none of said equipment is kept permanently in any one place.

"5. J. E. Whitley has never returned said equipment or any part thereof for taxes in any municipality in Georgia, nor has he paid any taxes on any of this equipment in any other municipality. This equipment has not been in any municipality during the year 1932.

"6. J. E. Whitley returns equipment for State and county taxes in Troup County, Georgia, and did return equipment for taxes in said county for the year 1932."

A municipal corporation can levy no tax, general or special, upon its inhabitants, or upon the property therein, unless the power to do so has been plainly and unmistakably conferred by the State. *Southern Express Co.* v. *Rose Co.*, 124 *Ga.* 581 (3), 588 (53 S. E. 185, 5 L. R. A. (N. S.) 619); *Lane* v. *Mayor &c. of Unadilla*, 154 *Ga.* 577 (114 S. E. 636). The charter of the City of LaGrange provides that the mayor and council "shall have full power and authority, and shall provide by ordinance, for the assessment and collection of an ad valorem tax on real and personal property within the corporate limits of said city, which is subject to be taxed by the State." Ga. L. 1901, pp. 477, 486, § 25. In view of the authority as thus expressly granted to the City of LaGrange, the

question here does not concern the power to tax, but instead has to do with the subject-matter upon which the power may be exercised. What is the meaning of the words, "personal property within the corporate limits of said city"? This is the sole question for determination, and is purely a matter of construction. It is the general rule that tax laws must be strictly construed against the government and in favor of the citizen (*Georgia Paper Stock Co.* v. *State Tax Board,* 174 *Ga.* 816, 819, 164 S. E. 197); but the cardinal rule is to ascertain the intention of the General Assembly in passing the legislation. Civil Code (1910), § 4, par. 9. It appears from the agreed statement that Whitley, the citizen, had his legal residence and domicile in the City of LaGrange, and that he was engaged in the business of a paving contractor. In the conduct of this business he had only one office and place of business, which was located in the same municipality. In connection with such business he owned and operated certain machinery and equipment which was never actually situated within the City of LaGrange, but was moved from place to place throughout the State of Georgia, wherever the owner might have use for it in carrying on the business of a paving contractor. The property has no definite and permanent location in any one place, but is at all times subject to removal according to the exigencies of the owner's business as conducted from his office in the City of LaGrange. Was it the intention of the legislature to authorize the mayor and council of this municipality to lay a tax upon tangible personal property under these circumstances?

As pointed out by Mr. Justice Lamar in *County of Walton* v. *County of Morgan,* 120 *Ga.* 548 (48 S. E. 243), it was the general policy of this State prior to 1868 that the situs of all property for taxation, whether real or personal, was determined by the residence of the owner, and that in the absence of statute "personal property is to be taxed where the owner resides." With the exception of a statute relating to railroad companies (Civil Code of 1910, § 872), there has been no general legislation upon this subject affecting municipalities. The decisions in *Greene County* v. *Wright,* 126 *Ga.* 504 (54 S. E. 951), and *Fulton County* v. *Wright,* 146 *Ga.* 447 (91 S. E. 487), depended largely upon the statute relating to railroads, and, with the exception of some general statements, these decisions do not shed any considerable light upon the present con-

troversy, although each of them recognized the general rule that the situs of personal property for taxing purposes is at the residence of the owner. This rule is subject to exceptions and modifications; as, for instance, where the property is actually situated beyond the limits of the State, or has a definite and fixed situs apart from the residence of the owner. "The power of taxation by any State is limited to persons, property, or business within its jurisdiction. . . Personal property, in the absence of any law to the contrary, follows the person of the owner, and has its situs at his domicil. But, for the purposes of taxation, it may be separated from him, and he may be taxed on its account at the place where it is actually located. . . If the State has actual jurisdiction of the person of the owner, it operates directly upon him. If he is absent and it has jurisdiction of his property, it operates upon him through his property." Tappan *v.* Merchants National Bank, 86 U. S. 490 (22 L. ed. 189). Such was the evident meaning and purport of the statement in *Armour Packing Co.* v. *Augusta,* 118 *Ga.* 552 (45 S. E. 424, 98 Am. St. R. 128), to the effect that "tangible personal property is taxable wherever it is situated, and that for purposes of taxation the maxim that personal property follows the owner does not apply." That case involved the right of the State of Georgia to tax the intangible personal property of a non-resident having an agency and place of business in this State; and the language here quoted was clearly not intended as a reversal of the general rule that personal property follows the owner for the purpose of taxation.

In *County of Morgan* v. *County of Walton,* 121 *Ga.* 659, 661 (49 S. E. 776), it was said: "Prima facie, personal property is returnable where the owner resides. Under the constitution, the legislature may fix a different situs for all personal property." See also 44 C. J. 1291, § 4322; 61 C. J. 522, § 635. In *City of Blakely* v. *Hilton,* 150 *Ga.* 27, 35 (102 S. E. 340), it was said that the delegation of authority to the City of Blakely to "put an ad valorem tax . . on all the property in said city," must be construed in the light of the general rule applicable thereto. Where the language of a statute requires interpretation, it is proper to consider the existing general law as illustrating the intention of the legislature; and unless the contrary appears, it will be presumed that the words of the particular act were used by the legislature in their

usual and ordinary signification. Innovations will not be presumed. *Tarver* v. *State*, 123 *Ga.* 494, 497 (51 S. E. 501); *Johnson* v. *Bradstreet Co.*, 87 *Ga.* 79, 82 (13 S. E. 250); *Coleman* v. *Board of Education*, 131 *Ga.* 643, 647 (63 S. E. 41). Accordingly the words "personal property within the corporate limits of said city" as contained in the charter of the City of LaGrange must be construed consistently with the general rule that for the purpose of taxation the situs of personal property is at the domicile of the owner. In Great Southern Life Ins. Co. *v.* City of Austin, 112 Tex. 1 (243 S. W. 778), it was held in effect that a constitutional provision that all property shall be assessed or taxed in the county where it is situated does not define or determine the situs of any property for purposes of taxation other than in accordance with the usual rules governing situs. See also Galveston *v.* Guffey, 51 Tex. Civ. App. 642 (113 S. W. 585); San Francisco *v.* Lux, 64 Cal. 481 (2 Pac. 254). In *St. Simons Transit Co.* v. *Brunswick*, 141 *Ga.* 477 (81 S. E. 199), the charter of the City of Brunswick was under consideration by this court. The charter authorized the mayor and council to levy and collect a tax "upon all taxable property within the limits of said city, upon real and personal property." A navigation company owned vessels which were operated from the City of Brunswick to St. Simons Island and return, both places being within the County of Glynn, but the island being beyond the limits of the City of Brunswick. For a portion of the time each day the vessels were docked in the City of Brunswick, where the company had its home office and place of doing business. While the facts of that case were thus materially different from those of the case now under consideration, the court through Mr. Chief Justice Fish laid down the following rule: "Where a navigation corporation is chartered under the laws of this State, and it appears that its principal office and place of doing business (that is, its domicile) is fixed in a named municipality, the taxable situs of a vessel owned by the corporation is in such municipality." It will be noticed that this statement contained no reference to the fact that the vessels were ever brought within the limits of the municipality.

If the machinery and equipment sought to be taxed by the City of LaGrange were permanently located without the limits of the State of Georgia, the authorities of this State would have no juris-

diction of the subject-matter, so as to authorize a tax thereon. Union Refrigerator Transit Co. v. Kentucky, 199 U. S. 194 (26 Sup. Ct. 36, 50 L. ed. 150) ; Delaware &c. R. Co. v. Pennsylvania, 198 U. S. 341 (25 Sup. Ct. 669, 49 L. ed. 1077) ; First National Bank v. Maine, 284 U. S. 312 (52 Sup. Ct. 174, 76 L. ed. 77 A. L. R. 1401). There was, however, no lack of jurisdiction in the City of LaGrange merely because the property was situated without the limits of the city. It was still within the State of Georgia, and the legislature of the State, being the source of the taxing power exercised by the municipality, could authorize the city to lay a tax upon personal property of a resident of the city, wherever such property may be located, if within this State. In Boyd v. Selma, 96 Ala. 144 (11 So. 393, 16 L. R. A. 729), it appeared that the charter of the City of Selma provided for the levying of taxes "on real and personal property, capital employed in any business carried on in said city." Boyd conducted an investment business in the City of Birmingham, and obtained notes secured by real estate located in Birmingham and payable to his order in that city. The business was not conducted from any office of the owner in the City of Selma, and the notes for the most part were never brought within the limits of the City of Selma. The court held that all the notes were taxable by the municipality in which the owner resided. The rules as to the situs of tangible and intangible personal property were discussed, and in the opinion it was said: "So far as we have been able to discover, the only exception to the rule that, for the purposes of taxation, the situs of visible, tangible personal property is the domicil of the owner, is where such property has been separated from his domicil by the owner, and placed elsewhere, under circumstances indicating permanency of location." It may or may not be true that if the property involved in the present case had a definite and permanent situs in some other part of this State, it could not be taxed by the City of LaGrange; but that question is not presented by the facts of the instant record. Compare Pullman Co. v. Pennsylvania, 141 U. S. 18 (11 Sup. Ct. 876, 35 L. ed. 613).

It is contended by the defendant in error that the property should not be taxed by the City of LaGrange, because it has received no protection from the laws of that city. It is true that the power of taxation is exercised upon the assumption of benefits rendered

to the taxpayer through the functioning of government (City of Kaysville v. Ellison, 18 Utah, 163 (55 Pac. 386, 43 L. R. A. 81); Union Refrigerator Transit Co. v. Kentucky, supra); but it can not be said that the owner himself does not derive a benefit from the municipal government which is now attempting to exercise the power of taxation over his property. The owner doubtless has advantage of the municipal institutions, including public improvements and police protection. If this alone would not suffice to justify the tax, the city is presumably holding out to him the same protection of the property in question that it provides for all other like property actually situated within the city limits, and he is at liberty to avail himself at any time of these advantages. The fact that he has a choice about the matter is itself a benefit, and certainly where his property has no permanently fixed situs at any other place, it can not be relieved from taxation merely because it is kept without the corporate limits of the municipality. We can not agree with the learned trial judge that this property was not subject to taxation by the City of LaGrange.

*Judgment reversed. All the Justices concur.*